548 So.2d 373 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Epherain LAIRD, Defendant-Appellant.
No. CR88-1382.
Court of Appeal of Louisiana, Third Circuit.
September 1, 1989.
Michael Johnson and Keith Manuel, Marksville, for defendant-appellant.
James Buck, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
*374 Before DOUCET, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for consideration the issues of whether the defendant was unduly prejudiced by the trial court's granting, on the day of trial, the State's motion to amend its answers to defendant's Motion For Discovery and Bill Of Particulars and whether the jury's guilty verdict was contrary to the law and the evidence.
Epherain Laird (hereinafter defendant) was charged by grand jury indictment with first degree murder, in violation of LSA-R.S. 14:30. On the first day of trial, before the commencement of the trial, the State moved to amend the indictment to charge the defendant with second degree murder, a violation of La.R.S. 14:30.1, without objection by the defendant. The trial then commenced and the jury of twelve unanimously found the defendant guilty of second degree murder. The trial judge sentenced the defendant to life imprisonment, without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction based on three assignments of error. We affirm.

FACTS
On August 26, 1986, the defendant and Robert Lair arrived at the Eat-A-Bite Cafe in the City of Alexandria, Louisiana, at around 2:00 A.M. They had just returned from a trip to Oakdale, Louisiana earlier that night in defendant's car. Before their arrival at the cafe, Lair noticed the defendant place a .22 caliber pistol in the waistband of his pants.
After exiting the car, defendant and Lair saw Ronald Hayes standing on the corner by the cafe. Both men approached Hayes. Lair asked him if Ronald McDaniel, the victim, had any cocaine that night and where he could be found. Hayes told Lair that McDaniel was in the cafe, and that he thought McDaniel had some drugs because he had seen McDaniel sell some that night. Lair entered the cafe and returned a short time later, stating that the victim had some cocaine for sale. Hayes and the defendant then positioned themselves near some bushes by the victim's car, which was parked a couple of houses away from the cafe, and waited for the victim to rob him of drugs. While they waited, Lair drove defendant's car to a parallel street across a field from where the victim's car was parked.
When McDaniel exited the cafe, he and defendant entered the victim's car, while Hayes remained near the bushes. As Hayes watched the car, he saw the victim reach down for something. Hayes saw defendant's hand go up and heard a shot fired. When Lair heard the shot, he walked down to the corner and saw the defendant getting out of the victim's car. Shortly thereafter, the defendant and Hayes ran across the field, entered defendant's vehicle and ordered Lair to drive off.
At this time, defendant told Lair that he had to shoot the victim because the victim pulled a gun on him. The defendant then showed Lair a nickel plated .38 caliber pistol that he claimed the victim pulled on him. The defendant stated that he had shot the victim in the face. The victim died as a result of a gunshot wound to the face.
On September 9, 1986, Sergeant Thomas Cicardo, the Alexandria Police Department Detective who investigated the homicide, questioned the defendant about the shooting. Detective Cicardo testified that defendant admitted to shooting the victim, but claimed it was in self-defense. When officers of the Alexandria Police Department searched the victim's car, they found a box of .38 shells on the floor board of the driver's side, a box of .357 shells on the floor board of the passenger side, a small scale between the seats, around 3½ grams of cocaine in the glove compartment, an empty gun holster, and a receipt for the purchase of a .38 revolver.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment of error, the defendant contends the trial court erred by allowing the State to amend on the day of trial its previous written answers to the defendant's Bill Of Particulars and Motion For Discovery And Inspection. The defendant *375 alleges that the amended answers, setting forth details of an oral statement made by the defendant to Detective Cicardo, was highly prejudicial and forced the defendant to testify at trial in contravention of his Fifth Amendment rights. As a result, defendant argues the trial court committed reversible error.
The defendant filed his Motion for Bill of Particulars and Motion for Discovery and Inspection on May 11, 1987. The State filed its answers to the motions on June 4, 1987. In its answers, the State stated it had no information as to any statements made by the defendant to any law enforcement officers. The answers did state the defendant made a statement to Lair that he shot the victim when the victim allegedly pulled a pistol on him. However, the defendant had also made a statement to Detective Cicardo on September 9, 1986, that he had shot the victim in self-defense. The officer included information about defendant's statement in a supplementary offense report and sent this report, together with the original investigative file, to the District Attorney's office on September 22, 1986. On June 4, 1987 in Open Court the State and defense stipulated to permit informal discovery of the State's evidence. Defense counsel admitted that, pursuant to this stipulation, the District Attorney's entire file had been opened to his access and inspection during pre-trial discovery and that he had viewed the entire file in the District Attorney's office. However, defense counsel could not acknowledge whether or not he had seen the information in the file about defendant's statement made to Detective Cicardo on September 9, 1986.
On June 20, 1988, the State moved to amend its written answers to defendant's motions before the voir dire examination of prospective jurors began on the morning of trial. Prior to that date, the State had telephoned defense counsel on June 17, 1988 and told him about the defendant's statement and sent defense counsel a copy of the supplementary offense report referring to the defendant's oral statement. The defendant objected to the State's written amendment to its previous answers to defendant's motions as not being timely, but the trial court overruled this objection and permitted the State's amendment to its answers to disclose the defendant's oral statement to Officer Cicardo on September 9, 1986. The State gave the defense, prior to the commencement of the trial, written notice of its intent to use the defendant's oral statement in evidence at the defendant's trial.
Louisiana law provides that upon motion of the defendant the court shall order the District Attorney to inform the defendant of the existence of any oral confession or statement of any nature made by the defendant which the District Attorney intends to offer into evidence, with the information as to when, where and to whom such oral confession or statement was made. LSA-C.Cr.P. Art. 716: State v. Jackson, 450 So.2d 621 (La.1984); Cf. LSA-C.Cr.P. Art. 768. The State's duty to disclose is a continuing one and if the State, subsequent to the ordered disclosure, discovers additional evidence or decides to use a particular item of evidence, it must notify the defendant of the existence of the additional evidence or its intended use at trial. State v. Ray, 423 So.2d 1116 (La.1982). The State's failure to comply with discovery procedures which results in prejudice to the defendant will constitute reversible error. State v. Meshell, 392 So.2d 433 (La.1980). However, the imposition of sanctions is within the discretion of the trial court and a defendant must show prejudice resulting from the court's adverse ruling before there will be reversible error. LSA-C.Cr.P. Art. 729.5(A); State v. Norwood, 396 So.2d 1307 (La.1981).
The defendant has made no showing of prejudice in this case. Defense counsel was informally notified of the existence of the defendant's statement made to Detective Cicardo three days before trial and given information about the defendant's statement. Moreover, defense counsel had also previously been given access and had reviewed the entire investigative file of the matter in the possession of the District Attorney. Presumably, the supplementary *376 report of Officer Cicardo containing information about defendant's oral statement was also in the file. Despite defendant's contentions, his oral statement to Detective Cicardo was not the only evidence that the defendant had shot the victim. There was the testimony of Lair that defendant admitted to shooting the victim. Also, there was the testimony of Hayes that he saw the defendant shoot the victim. The defendant was not forced to testify, but chose to do so in order to cast blame for the shooting on the victim. Under the facts of this case, defendant was not prejudiced by the fact that he was informally notified by the State of the oral statement made by the defendant to Detective Cicardo only three days before trial and then formally notified on the day of the trial by amendment of the State's written answers to defendant's discovery motions. We find no error in the trial court's ruling.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
In these assignments of error, defendant asserts that the trial court erred in denying his motion for a new trial, arguing that the evidence was not sufficient to support the jury's guilty verdict.
When reviewing the sufficiency of evidence to support a conviction, an appellate court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant to have committed the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Chism, 436 So.2d 464 (La.1983). Whenever the verdict is contrary to the law and evidence, the trial court shall, upon motion by the defendant, grant a new trial. La.C.Cr.P. Art. 851(1).
Second degree murder is the killing of a human being "when the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm." LSA-R.S. 14:30.1(2). The State, in this case, presented evidence that the defendant was in the perpetration of an armed robbery of the victim when he shot him. "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64.
There was sufficient evidence presented that the defendant, while armed with a gun, intended to take cocaine from the victim and, in the process, killed the victim. The defendant does not disagree that cocaine has value. However, the defendant insists that cocaine is not susceptible of ownership as it is contraband and, thus, the cocaine could not have belonged to the victim. The defendant's argument is one of semantics that is specious in the final analysis. In prosecutions for armed robbery, it is not essential that the property taken was owned by the victim; it is only essential that the accused was not the owner and the victim had a greater right to possession of the property at the time of the taking than did the accused. State v. McClanahan, 262 La. 138, 262 So.2d 499 (1972); State v. Sanford, 446 So.2d 1381 (La.App. 1 Cir.1984). It is a felonious taking, more than a perfect title of the alleged owner, which forms the essence of the jury question. State v. Refuge, 300 So.2d 489 (La.1974).
Although the victim did not legally own the cocaine, it was clearly within his possession and he exercised dominion over it to the exclusion of all others. Hence, the victim had a greater right to possession in this case than the defendant at the time of the attempted taking. The defendant's argument is, therefore, without merit, and there was sufficient evidence presented for a rational trier of fact to find the defendant guilty of second degree murder. As the verdict was not contrary to the law and evidence, the trial court did not err in denying the defendant's motion for a new trial.
*377 For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.