946 So.2d 218 (2006)
STATE of Louisiana
v.
Darnell SMITH.
No. 2006-KA-0318.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2006.
*219 Eddie J. Jordan, Jr., District Attorney, Graham L. Bosworth, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
STATEMENT OF THE CASE
On July 13, 2004 the State filed a bill of information charging the defendant-appellant Darnell Smith with one count of simple burglary, a violation of La. R.S. 14:62. The defendant entered a not guilty plea at his arraignment on July 20, 2004. On March 2, 2005 the State amended the bill of information to change the name of the owner of the structure; the defendant reentered a plea of not guilty. Trial then proceeded before a six-person jury which returned a verdict of guilty as charged the same day. On March 30, 2005 the court sentenced the defendant to serve six years at hard labor. The State subsequently filed a multiple bill of information. The court held a hearing on July 6, 2005 and found the defendant not guilty as a multiple offender, although the minute entry erroneously indicates that he was found guilty. The trial court granted the defendant's motion for an appeal and denied the motion to reconsider sentence.
STATEMENT OF THE FACTS
On June 15, 2004 at approximately 11:30 p.m., Savanna Delaplaine was reading in bed at her home at 1635 First Street when she heard a noise outside. When the noise was repeated, she got up and looked outside. She saw a light on in the building next door, which was under renovation. Knowing that no lights should be on at night, she went to another room for a better view. She looked through the window and saw the defendant sitting in a chair. She also noticed a chain, which at first she thought was actually on the defendant as a restraint. However, as she watched more, she realized that the defendant had a saw and was attempting to saw through the chain. Ms. Delaplaine then called 911, reporting a possible burglary at 1633 First Street.
Officer Russell Philabert of the New Orleans Police Department Sixth District was the first officer to respond to the 911 call of a burglary. When he arrived, without lights or siren, he met with Ms. Delaplaine. She invited him into her home so that he could look through the window as she had done. Officer Philabert did so, and from his vantage point he saw the defendant sitting in a chair with a saw trying to cut through a chain. The room where the defendant was sitting was illuminated with a shop light. Officer Philabert related his observations over the police radio. Officer Philabert saw Detective Fred Fath enter the room and apprehended the defendant. After the defendant *220 was removed from the scene, Officer Philabert entered the building and directed the crime lab personnel to take photographs, which he identified at trial. The photographs depicted a scoop-type saw, a chain, and various items to which the chain was attached.
Detective Fred Fath testified at trial that he was one of the police officers who responded to the 911 call of a burglary in progress at 1633 First Street. Because there was a wooden fence in front of the property, he could not see inside the first floor. However, over the police radio he heard Officer Philabert describing where the subject was and what he was doing. Detective Fath accessed the property by jumping a four-foot fence near the side driveway, and then he quietly entered the building. Once inside, he saw a light on in a room and observed the defendant sitting in a chair with his back to him. Detective Fath came up behind the defendant and demanded to know what the defendant was doing in the building. The defendant, who was still in the act of sawing through the chain, replied that he was watching the house. The officers immediately detained the defendant while the owner of the building was contacted. The defendant was arrested for burglary after the police learned that no one was supposed to be inside.
Detective Fath also identified photographs taken from the scene. He noted that the chain which the defendant was cutting was linked through various tools to secure them. Also, the detective testified that he learned that the defendant lived approximately two blocks from the crime scene.
John Schackai testified that he was a co-owner of the property located at 1633 First Street; he and his partner owned the property through a partnership, First Street Condos, LLC. He stated that the property was under renovation on June 15, 2004, and that he and his partner were acting as the general contractors. He stated that neither he nor his partner had hired the defendant to work on the property, nor had they given him permission to be there. He further testified that work at the property generally stopped at 3:30 p.m., although the plumbers stayed until 4:30 p.m. and then locked up.
The defense presented no witnesses at trial.
ERRORS PATENT
A review of the record for errors patent reveals that there are none.
DISCUSSION
In his sole assignment of error the appellant contends that the evidence was insufficient to sustain the conviction. Specifically, he contends that there was no evidence to establish that he did not have permission to be on the premises from one of the subcontractors who was working on the property. He notes that there was no forced entry, apparently to help bolster his argument that his entry was not unauthorized. The appellant also argues that the testimony of Mr. Schackai that the workers were gone by 4:30 p.m. referenced the date of June 15, 2005, but that the bill of information charged him with unauthorized entry on June 11, 2005 Thus, he argues, the State failed to negate the possibility that the defendant was present "watching the house" on June 11, 2004 with the permission of one of the subcontractors.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 *221 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268, 1275 (La.App. 4 Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Rather, this court when evaluating the evidence in the light most favorable to the prosecution, must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. This is not separate test from Jackson, but is instead an evidentiary guideline for the jury when considering circumstantial evidence, and this test facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984).
La. R.S. 14:62 defines simple burglary as the unauthorized entry of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than set forth in La. R.S. 14:60. To convict a defendant of simple burglary, the state must prove beyond a reasonable doubt that the defendant entered the structure or vehicle without authorization and had the specific intent to commit a felony or theft therein. State v. Ewens, 98-1096 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 93. Specific intent is a state of mind that need not be proven as fact but may be inferred from circumstances and the actions of the defendant. State v. Bailey, 00-1398 (La.App. 5 Cir. 2/14/01), 782 So.2d 22, 24.
First, it must be noted that the appellant's argument is in large part predicated on the assertion that the date of the offense as charged in the bill differs from the date referenced in the testimony. It is unclear how the appellant came to the conclusion that the bill charged the appellant with committing the crime on June 11, 2005 as the bill of information quite clearly states that the crime occurred on the "15TH day of JUNE".[1] John Schackai testified clearly that he was one of the owners of the property, that he and his partner were acting as the general contractors, and that the defendant had not been hired to help renovate the property. Furthermore, he testified that the defendant had not been given permission to enter the property. Finally, and most importantly, he testified on cross-examination that, to his knowledge, the work being performed on June 15th stopped at 4:30 p.m. and that the plumbers locked up at that time.
*222 Although the defendant told Detective Fath that he was on the property to watch it, Mr. Schackai testified that the property was secured by 4:30 p.m. Moreover, he testified that the work generally ended by 3:30 p.m. He did not testify that he and his partner had hired anyone as a night watchman, nor had they directed the supervisor of the job site to do so. Furthermore, when the defendant was under surveillance, he was observed trying to cut through a chain which secured various tools at the site. Thus, he was not watching the site at all. Also, Ms. Delaplaine testified she had previously lived in the building next door, that she knew it was being renovated, and that she knew no one was supposed to be there. She stated that she "knew that almost everyday at 3:30, six days a week, occasionally seven days a week, everyone that was working on the job was primarily gone. There was a padlock on it. And just from being there constantly, . . . [she] knew that no one should be in there at that time of the night." As to the lack of forced entry, Ms. Delaplaine testified that she could see into the room where the defendant was sitting because there were no window coverings and some of the windows were open.
Taking all of the testimony in the light most favorable to the prosecution, the State provided sufficient evidence to rebut the appellant's hypothesis of innocence that he was on the premises with the permission of the owners or their agents. This assignment of error lacks merit.
CONCLUSION
For the reasons stated above appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The appellant's reference to the year of 2005 is made throughout his brief, although the testimony and the bill of information consistently refer to 2004. The issue of the year is not a part of the appellant's argument. Interestingly, the State in its brief does not address the fact that the bill of information had the correct date listed.